**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Bryan Conwell,

        Plaintiff,

v.

City of Benson, Minnesota; Cherie Stielow,
*in her official capacity as Benson City
Council Member*; Ian Hodge, *in his official
capacity as Benson Chief of Police*; and
Matthew Skaret, *in his official capacity as
Benson City Manager*,

        Defendants.

Civil No. 26-3367 (DWF/SGE)

**MEMORANDUM**
**OPINION AND ORDER**

### INTRODUCTION

This matter is before the Court on Plaintiff Bryan Conwell's emergency motion
for a temporary restraining order ("TRO").  (Doc. No. 2.)  Defendants, the City of
Benson (the "City"), City Council Member Cherie Stielow, Chief of Police Ian Hodge,
and City Manager Matthew Skaret, oppose.  (Doc. No. 21.)  The Court held a hearing on
the matter on August 5, 2026.  (Doc. No. 30.)  For the reasons set forth below, the Court
denies the motion.

### BACKGROUND

Conwell is an "open-air preacher" and the founder of Equal Protection Minnesota,
a non-profit ministry dedicated to abortion abolition.  (Doc. No. 1 ¶¶ 2, 11.)  He
evangelizes by going to public places with anti-abortion and religious signs, distributing
literature, and speaking with members of the public.  (*Id.* ¶¶ 2, 30.)

When Conwell evangelizes in public, he does so peacefully. (*Id.* ¶ 33.) He either stands in a fixed location holding signs or he uses an amplification system to preach. (*Id.* ¶¶ 34-35.) He does not obstruct, threaten, or approach members of the public. (*Id.* ¶¶ 2, 36-37.) He claims to engage only with those who choose to engage with him and, when he uses his amplifier, he claims not to drown out other amplification being used or to harass or disturb anyone. (*Id.* ¶¶ 2, 35-36.)

Conwell seeks to evangelize at the Benson Farmers' Market (the "Market"). (*Id.* ¶ 3.) The Market is held on the Railroad Parking Lot (the "Lot") located in Benson, Minnesota. (*Id.* ¶ 16.) The Lot is owned and managed by the City, but the City authorizes the Market to exercise exclusive use of the Lot during the Market. (*Id.* ¶¶ 3, 17, 20.) The Market is organized by community members, not by the City. (*See id.* ¶¶ 57-58.) Members of the public may freely enter and remain on the lot during the Market's hours. (*Id.* ¶ 22.) If a vendor wishes to utilize the Market, they must register and pay a $20 fee. (*Id.* ¶ 23.) A vendor is defined as someone who sells a product or promotes a business, message, or information. (*See* Doc. No. 25 ¶ 6.)

In 2023, Conwell had multiple interactions with the Benson Farmers' Market and Defendants. In July 2023, police stopped Conwell from using a sound amplifier because it violated a city sound ordinance. (Doc. No. 1 ¶¶ 51-52.) In August 2023, Conwell again brought the sound amplifier to the Market and was told by Defendant Stielow (who was an organizer of the Market, but not yet a member of the Benson City Council) that he was required to fill out a vendor application form and pay the fee in order to express his message. (*Id.* ¶¶ 55-58.) Conwell refused to either pay the fee or leave. (*Id.* ¶¶ 59-60.)

2

A different vendor then moved an SUV to block the Market's patrons from seeing Conwell. (*Id.* ¶ 63.) Conwell moved to another area and then to a public sidewalk in order to be seen and heard. (*Id.* ¶ 66.) Shortly thereafter, police again stopped Conwell from using the sound amplifier. (*Id.* ¶¶ 67-68.) Then, in September 2023, Conwell filled out the vendor form and paid the fee, which allowed him to express his views in a tent as a vendor, which he did in September and October 2023. (*Id.* ¶¶ 71-72.)

For nearly three years, Conwell focused his evangelizing efforts elsewhere. (*Id.* ¶ 80.) Then, on July 9, 2026, Conwell went back to the Benson Farmers' Market. (*Id.* ¶ 88.) He stood in the Lot near the public entrance but not blocking any vendor stalls. (*Id.* ¶¶ 89-90.) Conwell did not intend to sell any goods or services; he intended only to convey his anti-abortion views. (*Id.* ¶ 93.) This time, he did not use sound amplification. (*Id.* ¶ 94.) Stielow again told him he was required to complete a vendor application and pay the fee, but Conwell refused. (*Id.* ¶¶ 95, 97.) The police then told Conwell he had to leave because the Market had exclusive use of the area. (*Id.* ¶ 101.) Conwell refused to leave, so the officer issued him a citation for trespass. (*Id.* ¶ 102.)

On July 16, 2026, Conwell returned to the Market. (*Id.* ¶ 118.) A car was parked across three parking spots, blocking the location Conwell had occupied the previous week. (*Id.* ¶¶ 119-20.) Conwell nonetheless set up a space for himself next to the car. (*Id.* ¶ 123.) The vendor in the next parking spot asked Conwell if he had paid the vendor fee and, upon learning that Conwell had not, the vendor threatened to call the police if Conwell did not leave. (*Id.* ¶ 125.) At the same time, a woman got into the car next to which Conwell was standing and, at the direction of Stielow, re-parked the car in a

3

manner that blocked Conwell. (*Id.* ¶¶ 127-28.) Conwell moved to be near the trunk and closer to the main walkway. (*Id.* ¶ 132.) Stielow then called the police. (*Id.* ¶ 134.) The police issued Conwell a second citation for trespass. (*Id.* ¶ 140.) Conwell remained at the location with his sign but did not use sound amplification or sell anything. (*Id.* ¶ 143.)

Conwell intends to return to the Benson Farmers' Market each time it is held in 2026. (*Id.* ¶ 151.) He fears that engaging in these activities will result in further citations and threats of arrest. (*Id.* ¶ 154.) Indeed, the police told Conwell that the more he returned to the Market, the more citations he would get. (*Id.* ¶ 138.)

On July 21, 2026, Conwell filed this action. (*Id.* at 46.) He alleges various violations of his First Amendment rights to free speech and free exercise of religion, and he challenges Benson's sound ordinance. (*Id.* ¶¶ 158-206.) The lawsuit is brought against the City of Benson, Stielow as a City Council member, Hodge as the Chief of Police, and Skaret as the City Manager. (*Id.* ¶¶ 12-15.)

On July 22, 2026, Conwell filed the emergency motion for a TRO. (Doc. No. 2.) He seeks access to the Lot during Market hours without paying a vendor fee and without citations or other consequences. (*Id.* ¶¶ 1-2.) For purposes of the TRO, he seeks only to stand at the Market holding a sign and allowing others to approach him. (*Id.* ¶ 1.) He does not seek the use of sound amplification. (*Id.*)

## DISCUSSION

### I.    Legal Standard

A motion for a temporary restraining order is analyzed under the same framework as a motion for preliminary injunction. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). The Court considers four factors in determining whether to grant a preliminary injunction: (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction would inflict on the nonmoving party; (3) the moving party's likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The central question is whether justice requires preserving the status quo until the merits are determined. *Id.* If a court finds that the plaintiff is not likely to succeed on the merits, this "strongly suggests that preliminary injunctive relief should be denied." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009). A preliminary injunction is an "extraordinary remedy," and the moving party bears the burden of establishing the need for a preliminary injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### II.    Likelihood of Success

The Court begins and ends with likelihood of success. Each of Conwell's claims are constitutional claims brought against the City or city officials in their official capacity pursuant to the 42 U.S.C. § 1983. A municipality may be held liable under § 1983 if it, under color of law, subjects a person to deprivation of any right. 42 U.S.C. § 1983; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Municipal liability exists

5

"only where the municipality *itself* causes the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Therefore, Conwell must establish that the City is liable for a purported constitutional violation.  He is unlikely to do so.

To start, the restriction is not direct state action.  The Benson Farmers' Market is run by community volunteers, not the City.  However, state action is also present if private conduct has such a close connection to the state that it may fairly be attributed to the state.  *E.g.*, *Meier v. City of St. Louis*, 78 F.4th 1052, 1058 (8th Cir. 2023).  Therefore, the question is whether the police's enforcement of the Market's vendor requirement makes it so the restriction was state action.[1]  *See generally Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (explaining the limitations on state action).  Comparison to two cases is helpful in this inquiry.

Conwell compares the circumstances to *Wickersham v. City of Columbia*, 481 F.3d 591 (8th Cir. 2007).  There, a nonprofit corporation hosted a Memorial Day air show at the municipal airport.  *Id.* at 593.  The event was free and open to the public.  *Id.*  The property was owned by the city, but the city passed a resolution which gave the organization exclusive control of the airport during the event.  *Id.*  The city police

---

[1]     Conwell attempts to sidestep this issue by arguing that the trespass citations constitute state action.  Even accepting that the issuance of a citation constitutes state action, such action must still be connected to the constitutional violation at hand.  Conwell's purported injury stems from the Market's requirement that any promotional vendor register and pay a fee.  The trespass citations were simply enforcement of the Market's possessory rights and were not independent state action.  To hold otherwise would allow a plaintiff to pursue a § 1983 action for police enforcement of any private party's property rights.

provided security at the event, including enforcement of the event's restriction on protesting. *Id.* at 594-95. The plaintiffs attempted to distribute antiwar fliers and collect signatures for a renewable energy initiative. *Id.* at 595. Police intervened and told plaintiffs they must stop or be arrested. *Id.* One plaintiff refused and was arrested for trespass. *Id.* The Eighth Circuit determined that the restriction on speech was state action because of the "active and prearranged role of police in effectuating the event's private speech policies." *Id.* at 598.

Defendants contend this case is more akin to *Reinhart v. City of Brookings*, 84 F.3d 1071 (8th Cir. 1996). There, a nonprofit committee hosted an art festival in a public park. *Id.* at 1072. The festival was free and open to the public. *Id.* The committee paid several city employees to provide security, but there was one police officer who patrolled the area without reimbursement to the city. *Id.* at 1072-73. The plaintiff attempted to hand out business cards for his campaign for governor. *Id.* at 1072. Security guards told plaintiff to stop. *Id.* at 1072-73. The plaintiff then moved out of the public park. *Id.* at 1073. The Eighth Circuit determined that the restriction on speech was not state action because the volunteers had full control over the festival's management. *Id.* at 1073-74.

The current circumstances fall somewhere in the middle. In both cases and here, the event in question was free, open to the public, and hosted by a non-government actor on government property pursuant to a grant of exclusive control from the city. The salient factual difference is who enforced the speech restriction. In *Wickersham*, the police were acting as security for the event and enforced the restriction. In *Brookings*,

security was handled by the event volunteers and they enforced the restriction.  Here, Conwell was initially approached by a volunteer working for the Market.  Then, he was approached and cited by city police working in their official capacity.

The Court finds that Conwell is unable to show a likelihood of success on these facts.  Neither the City nor the police were involved in the creation of the Market's vendor rules.  The police did not plan to enforce these rules by providing routine security, like in *Wickersham*.  The police merely responded to a call from a private citizen who volunteered at the Market.  Had Conwell, like the plaintiff in *Brookings*, followed the volunteer's instruction, there would be no police involvement.  Conwell cannot manufacture a § 1983 claim by refusing to follow the Market's rules, necessitating the involvement of police.

Without a strong showing on the merits, the extraordinary measure of a preliminary injunction is inappropriate.  *CDI Energy Servs*, 567 F.3d at 402.  Conwell has failed to establish a likelihood of success, so his motion is denied.[2]

---

[2]   The issue of delay was not brought before the Court, but it is worth noting that Conwell was aware of the Market's restrictions on speech no later than August 2023. While the Court's decision is not dependent on this fact, a three-year delay undermines Conwell's need for emergency relief.  *See Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (discussing delays in brining motions for preliminary injunctions).

**CONCLUSION**

Plaintiff's failure to establish a likelihood of success on the merits of his § 1983 claims ends the Court's analysis.  Plaintiff has not shown that either a temporary restraining order or a preliminary injunction is necessary.

**ORDER**

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that Plaintiff Bryan Conwell's emergency motion for a temporary restraining order (Doc. No. [2]) is respectfully **DENIED**.

Dated:  August 14, 2026                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge